Chief Justice Robertson
delivered the Opinion of the Court,
The County Court of Mercer having, in 1828, rejected a paper purporting to be the last will of John Meaux,. emancipating about sixty slaves—this Court reversed the order1, admitted the paper to record here, as the true last will of said Meaux, and directed the County Court also, to i-ecord it.
Humphrey Black, one of the persons who had been thus emancipated, having lived with John Woodson Meaux, and worked for him from the time of the testa-, tor’s death to. that of the decision upon the will by this Courts—sued him, in an action of assumpsit, for compensation for his services; and, having, on the trial, proved the foregoing facts—also proved that, the defendant had, on different occasions, between the death of the testator and the probate of the will, said, though not to him, that he would pay him for his labor in the event of the establishment of the will by the judgment of this Court,
But the Circuit Judge having virtually insti'ucted the jury to find for the defendant, verdict and judgment wex*e accordingly rendered in bar of the action.
A slave emancipated by will, is free from the time of the testator’s death; a child born of a mother so emancipated between the death of the testator and the probate of the will, would be horn free.
An act of 1798 authorizes the emancipation of slaves by last will, or by deed proved or acknowledged in the proper county court: the proof or aeknowl édgm’t [to com • píete the emancipation) applies to deeds only, not to wills. The county court may require of an emancipator of slaves, security for the support of the aged and but a failure tv give it, wifi not affect their right to freedom.
If the plaintiff was a free man from the testator’s death, whatever may be the true rule of law as to the legal right to compensation, in the absence of any contract, (and as to that we will not now speak) we cannot doubt that, as there was, at least, a moral obligation to pay for services which appear to have been valuable, and should not be presumed to have been gratuitous, the Circuit Judge had no authority to take from the jury their legal right to .determine, from the facts, whether the defendant ever agreed with the plaintiff to pay him for his labor, on the contingency of the will being established; for it seems to us that it was far from being impossible for an intelligent and impartial jury to infer, from the .acts and declarations of the defendant, that he had, in fact, made such a promise to the plaintiff.
And we are, also, of the opinion, that the plaintiff was a free man from the time of the testator’s death. His will then operated for every purpose for which it could ever be effectual. The subsequent probate was only necessary as evidence of its existence and legal validity. And surely any child born of any one of the emancipated females, between the date of the testator’s death and that of the probate of his will, would have been free a nativitate: but this could not be if, at the time of the birth, the mother was a slave.
The twenty-seventh section of an act of 1798 authorizes the emancipation of slaves by last will, or by deed proved or acknowledged in the proper County Court. The proof or acknowledgment of a deed of emancipation, prescribed by that enactment, as a necessary part of the act of emancipating, is evidently not required when there is a will instead of a deed; for a will could not be acknowledged in a County Court. And though the statute authorizes the County Court to require of an emancipator, security for the maintenance of aged or infirm persons whom he shall have liberated, a failure or refusal to give such security will not affect the freedom of the beneficiaries—Talbot v. David, 2 Mar. 608.
Slaves emancipated do not pass to the personal representatives, as assets: for— From the saving in the statute, of the rights of cre.ditors and others, the representatives of the testator are excepted, And— Slaves pass by last will, like land—the devise taking effect at the death of the testator—whether it he a devise to the slave, of his freedom, or of the slave, to another. And—
As soon as the emancipation is established in the County court, the slave is entitled to a certificate of freedom from the clerk, withppt the consent of the representatives of the emancipator.
The remedy of a creditor—prejudiced by the emancipation of the slaves of his debtor—is _ in fem, not againsf fhe executpr.
Nor does an emancipated slave pass, at all, to the personal representative, as assets; because, although the statute saves the rights of creditors, it expressly excepts from the saving the representatives of the testator; and. because also, as a slave passes like land by last will, a devise emancipating a slave, without qualification, should, as we think, take effect as fully and as soon as a devise of the slave to another person, as property; and because, lastly, the statute of 1798 entitles all emancipated slaves to certificates of their emancipation from the clerks of the courts in which the documents of emancipation shall have been proved; and it would seem to be the duty of such clerks to give such certificates, whenever applied for after probate, without regard to the consent or intervention of the personal representatives of the emancipators. A creditor’s remedy is in rem, and is not against an executor for a devastavit.
Wherefore, whatever may be the doctrine elsewhere, we are satisfied that a slave emancipated here by last will, is free the instant the testator dies; and that the assent of the executor is not necessary to his freedom, de jure.
As, therefore, the plaintiff was capable of making a contract at any time after his benefactor’s death, and as there was not a total destitution of evidence tending to show that there was some agreement, in fact, between him and the defendant respecting a contingent compensation for his services—we are of the opinion that the Circuit Court erred in its peremptory instruction; and therefore the judgment must be reversed, and the cause remanded for a new trial.