Judge Marshall

delivered the Opinion of the Court.
This action of trespass was brought by David, a man of color, to assert his freedom, under the will of Charles Wilkins, his former owner.
The will was proved and admitted to record in 1827, and in express terms emancipates David and other slaves of the testator.
The defendant, Snead, relied upon a bill of sale executed by the acting executors of Wilkins, within a few months after the probate of the will, by which they sell and warrant David as a slave for life, under the apprehension, as the writing states, that the estate of said Wilkins would not be sufficient to pay his debts. And it provides that, if the estate should prove sufficient, the purchase money should be received back, and David restored to the executors, that the will might be executed with regard to him. It was proved that the estate of Wilkins, both real and personal, was insufficient to pay his debts; that a large amount o.f debts, a part of them, in judgment, remained still unpaid; that David was sold by the executors, and the price paid to them for the purpose of paying debts, and that one of the executors who made the sale, was and still is a creditor of the estate for a large amount.
Upon these facts, David, under the direction, of the Cir *351 cuit Court, obtained a verdict, and from the judgment rendered thereon, Snead appeals;
The constitutional provision and statutes concerning the emancipation of slaves:
Tho' the constitution, in requiring the Legislature o pass laws permitting the owners of slaves to emancipate them, imposes the condition of 'saving the rights of creditors'—it does not fix their rights and remedies, unchangeably, as they were that date. Nor does it require that, the right of subjecting a slave to a debt, as personal property, & the right of reaching him directly by ex’on against the estate of his deceased owner, shall be preserved, as they then existed. The mode in which rights of creditors may be saved, while emancipation is permitted, is left to legislative discretion, and subject to change, from time to time And though there may be no law authorizing the levy of an ex’on on slaves emancipated by will, or subjecting them in anyway to the debts of the emancipator, before his other estate, real and personal, is exhausted — yet, if the creditor has a practical, efficient, remedy for subjecting them at last, his right is saved, in the sense of the constitution.
*351 The first, as well as the present constitution of this State declares, that the “Legislature shall pass laws permitting the owners of slaves to emancipate them, saving the rights of creditors and preventing them iron becoming a charge on the county;" and the twenty seventh section of the act of 1798, “to reduce into one the several acts respecting slaves, &c.” Stat. Law, 608, after providing for the mode of emancipation by deed or will, declares, in effect, that the slaves thus emancipated, shall enjoy as full freedom as if they had been born free—saving, however, the rights of creditors and every person or persons, bodies politic and corporate, except the heirs or legal representatives of the person so emancipating such slave or slaves. ”
This section is but a re-enactment of the fourth section of “the act of 1794, (1 Litt. Laws, 246,) and at the date of both acts and of both constitutions, slaves were personal property, so far at least as concerned the payment of debts — being liable to sale under execution, after the exhaustion of other personal estate, and being also assets in the hands of executors or administrators, with power to sell, upon a deficiency of other personalty, when necessary for the payment of debts. The twenty eighth section of the act of 1798 declared slaves to be real estate,but the following sections apply so many exceptions and modifications to this condition, that, except in relation to the course and manner of descent, they are left substantially in the same condition as before. And in that state of things the present constitution was adopted, containing the same injunction upon the Legislature, with the same saving of the rights of creditors, which was Contained in the first.
But while this constitutional provision preserves the lights of creditors, notwithstanding the emancipation which it authorizes, it did not intend to fix the right and the remedy of the creditor in regard to slaves emancipated, to the precise condition in which they existed at the date of the constitution, nor to restrict the Legislature from either changing the remedy by which’ slave's in gen *352 eral might be subjected to the payment of debts, or from discriminating between the mode of subjecting slaves held as such, and slaves emancipated by deed or will. The right intended to be saved, is the right of subjecting the slave, or his specific value, to the satisfaction of the creditor’s demand, though emancipated, or attempted to be emancipated, by the debtor. It is not the right of subjecting him as personal property, and before the real estate is resorted to, nor the right of reaching him directly by judgment and execution against the debtor’s personal representative, that is saved by the constitution. But it is the mere right of subjecting him, or his value, to the demand, in such mode as the Legislature may, from time to time, expressly provide, or leave open, under the general principles of the remedial law. So long, then, as there is an efficacious practical remedy for enforcing the right, it is saved in the constitutional sense, though the emancipated person were not accessible to the creditor, for the satisfaction of his demand, until all other estate of his debtor be exhausted, and though he be not accessible as personal estate in the hands of the executor, or by means of a judgment and execution against him. The whole object and purpose of the constitution is answered, if the act of emancipation does not defeat the right of the creditor, by putting the slave beyond his reach.
An act of Nov. 26, 1800, declares that slaves, so far as regards last wills and testaments, shall be real estate, and pass by will like landed property; and this statute has the effect of withdrawing the slaves entirely from the hands & power of the ex’or, and vesting them, at once, in the devisee; & it applies to slaves emancipated (or devised to themselves,) as well as to those devised to others, as property. And, as a slave devised can only be subjected to a debt of the testator, by a direct proceeding against the devisee; so, when he is emancipated by will, he can be subjected only by a direct proceeding ag’st himself: in which the necessity, the extent, and manner, of subjecting him, may be determined. And, as the devisee may retain the slaves devised to him, by paying their value, so: the slave emancipated may retain his freedom on the same terms.
*352 Were it then admitted, that a slave emancipated by will might, under the laws before referred to as existing at the date of the emancipating statute, and of the constitution, have been subjected to the debts of the testator, either by a voluntary sale by the executor, or by judgment and execution against him — as these modes of proceeding were not fixed by the constitution, as rights of the creditor, which could not be affected, but, if rightful at all, were so in consequence of the statutes and legal principles relating to the rights of executors, and the quality and condition of slaves as property — it remains to be seen how far these remedies have been affected by subsequent legislation.
The only subsequent act materially affecting this question, is that of November 26th, 1800, (Stat. Law, 1546,) amendatory of the act on the subject of last wills, &c. *353 which declared that ‘'slaves, so far as regards last wills and testaments, should thereafter be held and deemed to be real estate, and should pass by will in the same manner and subject to the same regulations as landed property.” This statute, consisting of a single section, contains no modification or exception to the principle thus established; nor has it been in any manner qualified or limited in its operation by any subsequent statute, except by one passed at the same session, and which will be presently noticed. If, then, slaves emancipated by will are embraced by the declaration just recited, then, so far as the operation of the will is concerned, it takes full effect under this statute, and by its own force withdraws them entirely from the hands and power of the executor, as the personal representative of the testator. This has often been decided to be the operation of the statute, in cases where the will devises slaves to be held as property; and if it extends to wills emancipating slaves, or to slaves emancipated by will, it must, if uncontrolled, have the same operation in those cases.
The case of Cook vs Cook, 3 Litt. 238, shows that the statute was understood at the time of that decision, as embracing the case of a will emancipating slaves; and a like opinion was expressed in the late case of Black vs Meaux, 4 Dana, 188, and perhaps in other cases. And it is evident from the act of the 15th of December, 1800, passed at the same session, and shown by its title to be a mendatory of the former, that the Legislature which passed the act under consideration, understood it as embracing the subject of emancipation by will, and should, therefore, be presumed to have intended to embrace that subject. The act of December, 1800, (Stat. Law, 1547,) after authorizing persons over the age Of eighteen years to emancipate their slaves by will or. an instrument 'in writing, repeals so much of the act of November as comes within its purview. And as the act of November could not come within the purview Of that Of December unless it embraced the subject Of emancipation by will, to which alone the last act relates, it is thus manifested that this subject was supposed to be embraced, by the Legislature which passed both acts.
*354 It is contended, however, that slaves emancipated by will cannot properly be said to pass by will, because they cease to be property if the will takes effect, and do not pass to any one as slaves; and hence it is concluded that the words ‘pass by will being inapplicable to slaves emancipated, the statute cannot be understood as intending that they shall pass by will as land. To this it may be answered, first, that by the general words of the statute, slaves (without exception) shall be deemed real estate, go far as regards last wills and testaments; that is, as we understand it, so far as the will of the owner changes or disposes of the title, which would otherwise pass to his administrator and heirs; and this is enough, without the subsequent clause, to take the emancipated slave from the executor. But if the whole force of the statute be comprised in the latter words., viz: that slaves shall pass by last will &c. in the same manner and under the, same regulations as landed property, we could not admit that this language was. so inapplicable to slaves emancpated by will, as to show that they were not intended to be included in the general enactment, that slaves should be deemed real estate so far as regards wills, and in the effect of that enactment as specifically declared by the subsequent clause. If the subsequent words are to control the preceding general declaration, the latter should also control the former, so far, at least, as to require the restrictive words to be understood in a liberal, and not in their narrowest, sense. Otherwise the general declaration would be wholly useless.
It is to be observed that, the, statute does, not say that slaves shall be held under a last will, as lands are held, but only that, they shall pass as lands, pass, that is, directly by force of the will, and freed from the. control or intervention of the executor; and there is. no inference from the statute, that it applies exclusively to slaves which are to be held under the will as property, unless. that inference is to be drawn from the word pass. But that word, even when applied in its natural sense to merely physical objects, does not necessarily denote that the thing which, is said to pass, must continue, intrinsically in the same condition, state or, quality, either. during its transit, *355 or at the end of it. On the contrary, it is often properly used to denote a change of condition, state or quality, and it is that change which constitutes the transition denoted by the word pass. And a person emancipated by will, may be appropriately said to pass by the will from a state of slavery to a state of freedom.
But it is really the title in the slave that shall pass by will, as the title in land passes by will. And what is the title to a slave? Undoubtedly, it is such dominion, or right of dominion, as the laws allow one man to have over the services, the powers and the faculties of another. By the act of emancipation, whether by deed or will, or in whatever form, this right is lost by the master, and acquired by the slave; who thenceforth, by reason of this acquired right, becomes his own master, the proprietor of himself, and thus a free man. He is free, because he has rightful dominion over himself; and this dominion which, existing in another, made him a slave, and constituted the title of that other to him as a slave, comes to him, where slavery exists by law, not as a natural, original right, but as a derivative right, acquired from another. And the slave is free, because the title to him, as a slave, has passed from his master to him. If he is emancipated by will, the title passes to him by the will. And, at all events, it passes out of the former owner, which is sufficient, whether it be extinguished without vesting in the slave, or by so vesting. For, if it passes from the testator as land, it never can come to his executor.
We are of opinion, therefore, that, under the act of November, 1800, no distinction can be made between the effect of a will which emancipates a slave, arid one which devises á slave to be held as property. And from this conclusion, it seems to follow that, as the statute takes slaves devised as property out of the reach and control of the executor, so it also takes the slave emancipated by will, out of his reach and control; that, as the slave devised as property, can only be subjected to the debts of the testator by means of a direct proceeding against the devisee, so the slave emancipated by will, can only be subjected by a direct proceeding against him; in which the necessity of propriety, and manner, of sub *356 jecting him to the satisfaction of the debt, and the extent to which he should be subjected, maybe ascertained; that, as the devisee of a slave may retain the slave by paying his value, or so much as may be required for the satisfaction of the testator’s debts, so the slave emancipated by will, may retain his freedom upon the same terms. And that, as the title of the devisee of a slave is not divested by the fact that the testator is indebted greatly beyond the value of his entire estate, but can only be divested, against his will, by regular, legal proceeding; so the title of the slave emancipated by will, remains until it is regularly divested under authority of law, subject only to such legal restraints as may be necessary to save the rights of creditors.
When slaves were entirely personal property, the right of one emancipated, to his freedom, was not absolutely destroyed by his being sold under ex’on, or by an executor-as was held in a case in 6 Dana. And it is consistent with the constitution, and seems to be required by the statutes, to say that, a slave emancipated by a will, is free, until he is restrained by authority of law, in virtue of the rights of a creditor; & since the act of Nov. 1800, this restraint cannot be imposed by an ex’or or creditor, without the intervention of the chancellor: who, when there is no other means of satisfying a creditor, will subject slaves emancipated by will, to such terms as will secure to creditors, all they have a right to ask, without impairing the right to freedom, farther than may be indispensably necessary.
If it be conceded that, when slaves were personal property for all purposes, it was the right and duty of the executor to take possession of a slave emancipated by will, and that such slave might be sold for payment of debts by the executor, or by execution against him; even then, such sale would not, according to the principles declared in the case of Nancy vs Snell, 6 Dana, 148, have destroyed absolutely the right to freedom. Audit is entirely consistent with the constitutional provision on the subject, while it seems to be required by the obvious tenor and spirit of the act relating specifically to emancipation, to say, that the slave emancipated by will, is free until he is restrained by authority of law, in virtue of the rights of a creditor, and that since the act of November, 1800, this restraint is to be imposed, not by the naked acts of . the executor or creditor, but through the intervention of the Chancellor; who, whenever it s.hall be made to appear that a creditor is in danger of losing his debt in consequence of the emancipation of his debtor’s slaves, by will, may subject the slaves so emancipated, to such terms as will secure to, the creditor all that he has a right to ask; while he will not, without absolute necessity, destroy nor impair, farther than the exigency of the case shall require, the right to freedom given by the will of their owner, and subject by law only to the saving ah ready stated.
The clause of the constitution of this state which saves the lights of creditors where slaves are emancipated, does not make the emancipation void, merely because there are creditors of the emancipator unsatisfied; nor reduce one emancipated to slavery again, merely because he may be made liable, to the extent of his value, or sold for life, to satisfy debts of his emancipator. It gives the creditor no right to the person or services of the freed slave; but a right to his value only: and if the creditor obtains that, the constitution is satisfied, & he has no right to complain; & that right he may assert in a court of eq.—where the person emancipated may have his freedom protected, by paying what he would be worth as a slave, if he has the means; and where the creditor may be secured against loss by the removal of the person on whom he claims a lien, and have his debt provided for, in such mode and to such extent, as the rights of all parties may require & allow.
The saving in favor of creditors, does not make the emancipation ipso facto void upon the mere fact, that, there are unsatisfied creditors. It does not make the emancipated person a slave because there are debts for which he is bound to the extent of his value, and for which he may, if necessary, be sold for life. It gives to the creditor as such, no right to his person or services, but only to his value, to be reached in the order and in the manner allowed by law. And, as already intimated, if the laws furnish him a remedy for reaching and appropriating this value, if it be necessary for the satisfaction of his debt, the requisition of the constitution is fulfilled, and he has no right to complain.
That there is such a remedy, we have no doubt, The emancipated slave is certainly a devisee; and if such a one has acquired property equal to or exceeding his own value as property, a judgment against him as devisee, would as effectually subserve and save the rights of the creditor, as a judgment against any other devisee of equal property. But, as these instances might be few, and as in other cases where the devisee by emancipation might be irresponsible as a freeman, there would be an apparent incongruity, and perhaps impracticability, in treating him as a free man for the purpose of obtaining a judgment, and then treating him as a slave, or making him one, for the purpose of obtaining satisfaction, the legal remedy against him as devisee, might not always be deemed, either appropriate or efficacious. But for this very reason, and also for the reason that, in a court of equity, the rights of both parties could be better guarded, and the circumstances on which they depend better investigated, the creditor might undoubtedly resort to a court of chancery, in the first place, for securing him against loss by the removal, if the circumstances should authorize an application for that purpose, and in the next place, to enforce the satisfaction of the debt, in such mode and to such extent as justice and the rights of the parties might require. And this, for obvious reasons, would be the most suitable, if not the only efficacious remedy, in all cases in which the emancipated slave had not acquired property which might be sold under an execution against him.
In ordinary cases a debtor is not allowed so to dispose of his property, that it cannot be reached by his creditors, by the ordinary process; but the emancipation of slaves by last will is made an exception to this general rule, by laws, not inconsistent with the constitution, an efficacious remedy being left, for creditors.
It is true that, in ordinary cases, a debtor is not allowed so to devise his property as to place it beyond the reach of his creditors by the ordinary legal process to which it would otherwise have been subject. But the right of emancipating a slave by will, is a specific right, sanctioned by the constitution, and expressly provided for by statute. The constitution and the law might have made it absolutely effectual against creditors. The constitution has imposed the limitation that it shall not destroy, nor unreasonably impede, the creditor’s tight of coercing satisfaction. And if the Legislature has failed to provide, or has repealed, the legal remedy, leaving open an efficacious and appropriate remedy in chancery, this cannot impair the right of emancipation.
We are of opinion, therefore, upon the whole case, that although it seems that the value of David may be required for the payment of his former owner’s debts, and although, if necessary, he may still be subjected to involuntary servitude for life by proper proceedings instituted for that purpose, he must, until that is done, be regarded at law as a freeman, and therefore was entitled to sue and recover as such in this action.
Wherefore, the judgment is affirmed.