Judge Ewing
delivered the Opinion of the Court.
The appellant sued Snell for her freedom; failed in the Circuit Court, and has appealed to this Court.
She claims her freedom under the will of Ann Burgess, her former mistress, who died in Maryland, in pg26 — having first made her last will and testament, which was duly admitted to record, with the Register of Wills. The will contains the following clauses: — “After my debts and funeral charges are paid, I desire and bequeath as follows. It is my will that my colored woman Nancy go free, and her two children, Charles and Richard Hamilton, go free with her;” and, besides making several small specific bequests, in the subsequent part of her will, directed that others of her slaves should go free; and appointed Ephraim Etchison her sole executor. Etchison having refused to qualify, the Orphans’ Court of Montgomery county, Maryland, appointed Ninian M. Claggett and George V. Spangler administrators, with the will annexed: the former of whom, in March, 1832, sold Nancy and her children to one Osburn, of -Scott county, Kentucky; who brought them to this State, and sold her to the defendant.
The statutes of Maryland prescribing the mode for the emancipation of slaves by will, and securing the rights of creditors, are not exhibited in this record. We must, therefore, on the facts before us, dispose of the case upon general principles of law.
-A- preliminary question is raised. It is objected by counsel for the appellee, that the exceptions of the . appellant to the opinions of the Circuit Court, that are ca^e^ question, were not spread on the record during the term at which the case was decided in the Circuit *149 Court, but were entered, nunc pro tunc, at a subsequent term, and cannot be noticed by this Court.
Slaves —regarded as property where slavery is tolerated— cannot be emancipated by will, or otherwise, to the prejudice of the owner s creditors.
Slaves, when emancipated by will, beiDg property, and themselves the legacy, take also, the character of legatees; and in this state, as well as in Va. are regarded as legatees of the most favored character. Hence — Where an ex’or sells, without necessity, a slave which the testator has emancipated by his will, the privileges of the purchaser are not the same as where the slave is devised to another legatee. In the latter case, the purchaser takes an indefeasible 'title, and the legatee must seek his redress from the ex or, or from the estate. But the emancipated slave — who, being a slave, could maintain no suit, and who could not be indemnified for the loss of freedom, by damages— shall not be deprived of that inestimable right, by the maleonduct of the ex’or, in selling him without necessity. The purchaser s privilege, however innocent he may be, will not be sustained against a right to freedom, unless from the condition of the estate, the sale was inevitable. •
It seems that the exceptions were taken at the proper time, and drawn out, signed and sealed by the judge, and placed on', file, during the term at which the cause was .disposed of, though not then spread on the records of the Court. This, we deem a full compliance with the requisitions of the statute of 1798 — r— 1 Slat. Laws, 246.— If entered on the record at the time, the seal of the judge, or justices, is not necessary, as was decided by this Court in the case of Washington vs. McGee, 3 Dana, 446. If not entered on record, then the seal is required, and is sufficient, of itself, to authenticate the exceptions.
Slaves being regarded as property — those rules of evidence and principles of law applicable to property, and to the rights of creditors, are not to be disregarded by this Court, even in cases when their freedom is involved. ’ As property in the hands of a -testator, they constitute a fund for the payment of debts, and can no more be emancipated to,the prejudice of creditors, than they can be given away to third persons. The testator in this, as well as in donations or bequests, must be just before he ean be generous.
But when emancipated by will, they occupy the double character of property and legatees, or quasi legatees. And, as freedom is a legacy, above all price, humanity, justice and the spirit of our. laws, inculcate the propriety, of placing them in the most favoi’ed class of legatees.
In consideration of the inestimable merit of this right, the Supreme Court of Virginia, in the case of Patty & others vs. Colin others, (1 Hening & Munford, 525, &c.) sustained a bill, in behalf of the complainants, who had been emancipated by will, against Colin, who had innocently purchased them from a purchaser under execution, on a judgment against the administrator, with the *150 •will annexed, of the decedent — applying the estate of the decedent — -specific legacies excepted — to refunding the consideration paid by him, and interest, if sufficient, if not, .a sale of the complainants for a term of years, if a sale in that form- would suffice, if not, that their bill be dismissed, and their sale for life stand.
In this case, Judge-Roan uses the following language: 44 The spirit of the decisions of this Court in relation to 44 suits for freedom, while it neither abandons the rules 44 of evidence, nor the rules of law as applying to pro-44 perty, with a becoming liberality, respects the merit of 44 the claim, and the general imbecility of the claimants. 44 On this ground it is that parties of this description are 44 not confined to the rigid rules of proceedings, and that 44 their claims are not repudiated by the Court, as long. “ as a possible chance exists that they can meet with a 44 successful issue. Instances of the former kind ar nu-44 me^ous, and of the latter, it will be seen in the case of 44 JLbby vs. Woodley (in manuscript,) that this Court only 44 determined against the paupers in the last resort, and 44 after every possible source of redemption, should be 44 found to have failed.”
And in the case of Boyce vs. Nancy, 4 Dana, 238, this Court very strongly intimates a distinction between the rights of a slave emancipated by will, which has been sold by an administrator without necessity, for the payment of debts, and the rights of others claiming against such unnecessary sale; placing the rights of the former, as of inestimable value, upon different and higher ground than the latter. Both decisions recognize the-right of an emancipated slave to assert his right to freedom, even against an innocent purchaser, when there were sufficient funds for the payment of debts without such sale. Other legatees, specific or general, may indemnify themselves out of the residue of the estate, or by a proceeding against the administrator and his sureties: which is deemed by the law, a sufficient means of indemnity, without disturbing the rights of purchasers; whose rights, as the best means of guarding the peace of society, and the security of titles, should, in the general, be protected. But a slave, as a quasi legatee, or *151 beneficiary in a will, cannot maintain a suit for indemnity, or hold as a slave, what might be recovered if a suit would lie; and if he could sustain a suit, and hold what he recovered, no recovery in dollars and cents, could be" esteempd an adequate remuneration for the right which he is deprived of.
A court of ch'y is the most appropriate tribunal to be resorted to by an emancipated slave, to enforce his right to freedom — especially , when he has been improperly sold by the ex’or of the owner who emancipated him. There, the purchaser may have a decree ovar, for indemnity;— the rights of all . persons interested may be properly adjusted; & jf the assets (independent of the slave emancipated,! are insufficient to pay the debts, but the deficiency can be supplied by a sale of the slave for a term, of time only (not for life,) that course will be adopted, to secure the ultimate freedom of the slave, & in part, the testator's ob-object. And— ^ndpated ^n anotherstate,has been improperly sold there, and brought here, he may maintain his bill here,.it seems, for his freedom; although the rights of the purchaser, the foreign executor and others interested in the estate abroad, cannot be here adjusted. If the slave is entitled to freedom, he will not be referred to a foreign tribunal, -which, from^his condition, is wholly inaccessible to him. If the purchaser sustains a loss, he must seels his indemnity where he made his purchase: for the evidences of the slave’s right, to freédom, being of record, where the will is, the maxim caveat emptor is peculiarly applicable. -
A court of chancery, as in the case of Patty, &c. vs. Colin, &c., would, no' doubt, be the most appropriate tribunal to take cognizance of the case; where all the parties can be brought before the Court, and the debts of the testator, and accounts of the executor enquired into and adjusted, and the innocent purchaser indemnified and'secured, at least in the consideration paid by him, and interest, if it can be done, and full and final justice done to all the parties; and where, if the debts were not equal to the whole value of the emancipated slaves, over and above, the other means for their discharge, they might be sold for a term of years only, and not for life. '
But in a case like the present, where the slave has been sole! in a foreign State, and hurried oif to this, and where the estate, debtors and creditors, legatees and administrators of the estate'are all residents of the foreign State, and without the power or control of a court of equity here, to make her claim depend upon a precedent indemnity to the purchaser, or drive her back to a court of chancery in Maryland, for redress, where she is inhibited from going, by the restraints of a master, would be tantamount to an absolute denial of justice.-
Better, therefore, would it seem to be, and more consonant with the principles of eternal justice — which is the foundation of all law — that she be permitted to assert her right to freedom in the tribunals here, and the purchaser be compelled to seek his indemnity from his vendor, than that she, by the wrongful act of an admin *152 ;strator, be deprived of an inestimable right, - under the pretext of a want of power in the tribunals here, to affor¿[ redress.
Though a devise of freedom to a slave, is a legacy of the most favored kind, it stands upon the same footing with other legacies of personal estate; its recovery, or enforcement, is subject to the same principles and rules.
. If in any case, the maxim caveat emptor applies, it should'be made to apply to the vendee in a case like this.
Nancy was entitled to her freedom, by the benevolent bequest of her deceased mistress, if not necessary for the payment of debts. The document of- her freedom was spread on the records of the country, open to the inspection of any one. The powers of the administrator, from whom he derived his title, is derived from the same record. The vendee had it in his power to ascertain, by reasonable research and enquiry, the condition of the slave, and the condition upon which alone she was liable to be sold. And if he could not be fully satisfied, enough could have been seen to put him upon his guard, and induce him, either to decline the purchase, or demand indemnity against any unforeseen hazard.
In view of all these circumstances, we could hardly deem it our duty, as consistent with humanity, sound reason, or the liberal spirit of our laws, so highly to regard the right of a purchaser, as to permit it to be interposed as an insuperable barrier against the assertion of all right on the part of the slave. And the more especially as he, by his own act, has forced her out of the State of her residence, and thereby put it out of her power, by a proceeding in chancery, to operate upon the administrator and estate there, to secure his indemnity, according to the principles settled in the case ^ of Patty vs. Colin, tyc.
But the question still occurs — is her remedy at law, or in chancery?
Though her right to freedom is a specific bequest, which should be made to occupy the most favored ground, among that class of legacies — -as a bequest, or quasi bequest, it can only be recovered or enforced by those established rules of law, governing the remedy, applicable to other specific legacies. And as slaves, from their nature and quality, must, in the general, be regarded as personal property, in the absence of any statute changing their character, and as none is exhibit *153 cd in this case, and as by the will of Ann Burgess, her slaves, including Nancy, were not emancipated, until after the payment of debts — we must treat them as personal estate, and apply those rules of the common law to them 'which are applicable to such property.
A suit 'at law may be < 'maintained against an ex or, for a general legacy-, upon his promise to pay it, not otherwise; 'or for a specific legacy, when, and only when, the ex'or has assented to it. If the promise, in the one case, or the assent in the other, has not been given, the remedy is in chancery.
By the common law, all personal property, whether bequeathed or not, passes to the personal representative of the decedent, and the legal title rests in him. He represents the person as well as personal estate, of the decedent; and no one oan take, except from him, or by h-is assent; creditors look to him for the payment of their debts, and he is responsible for a devastavit, if he deliver over to the most favored legatee, the assets which came to his hands, without satisfying .the debts. Being invested with the legal title, can he or any one deriving title under him, be sued at law, by a legatee, by the .'principles of the common law? We think he cannot — except when he has assumed to pay a general legatee, or assented to a specific legacy.
- In the case of Atkins et uxor vs. Hill, (Cowper, second American edition, 159,) and Hawkes et uxor vs. Saunders, (Ibid. 160,) the Court decide, that assumpsit will lie for a general legacy, upon an averment of assets sufficient to pay all debts and legacies, and an express promise to pay; but purposely waive the question whether an action at law would lie without an averment of an express promise.
In the-case of Decks vs. Strutt, (5 Term Rep. 692,) an action of assumpsit was brought at law, against an executor, for the recovery of a general legacy, upon the averment of assets sufficient to pay all debts, legacies and funeral expenses, and the Court unanimously decided that it would not lie. Lord Kenyon, Ch. J. remarks that “ the supporting of the present action would be attended with the most pernicious consequences, and I believe that no action,- till lately, (except one in the time of the Commonwealth,) for a legacy, has been supported in a court of law.” And Ashhurst, j. remarks that, “ prima facie, it is a strong objection against such an action as the present, that only one instance is to be found, in which it has been supported.” “ Policy and conve *154 nience are also against the jurisdiction of the courts of common law over the subject; in a court of law we cannot impose any term on the party suing; if he be entitled to a verdict, the law must take its course. But a Court of Equity will impose on the party applying, such terms as they think right, and according to conscience.”
The single case, to which the court alludes as a solitary exception, was in the time of the Commonwealth, when the ecclesiastical courts — which had exercised jurisdiction over legacies — were suppressed, and courts of equity had not then assumed jurisdiction over the subject, and but for the remedy at law there would have been a failure of justice. Though the latter case stood upon different ground from the two former, and was not expressly overruled by it, yet the reasoning of the court tended strongly against the principles then settled, and the Chief Justice stated, that those who, not long since, entertained a different opinion, from the inconvenience, impolicy and incompetency of the court to impose terms and to do full justice to all concerned, had reason to change their opinions.
In a subsequent case — the case of Doe, on the demise of Lord Saye and Sele vs. Guy, (3 East’s Rep. 121,) which was an action at law to recover a specific legacy, upon •proof of the assent of the executor, the Court recognize and admit the doctrine laid down in the case of Decks vs. Strutt, but sustain the action upon the express grounds of the assent of the executor to the legacy.
And in the more ancient cases, as in the case of Duppa vs. Mayo, (1 Saunders, 278,) and in Saunders’ case, (5 Coke’s Rep. 12, b,) and Chamberlain vs. Chamberlain, (1 Chancery cases, 256,) and Bastard vs. Stuckley, (2 Lev. 209,) all go upon the ground of an assent of the executor, and all recognize the doctrine that the legal title vests in the executor, notwithstanding the will, and can only pass out of him or become vested in the specific legatee by his assent. And our own Courts, by a train of decisions, have based the right of a legatee to maintain a suit at law against a third person, upon the ground only .of the assent of the executor. From all these authori *155 ties, the principle seems to be too firmly fixed, now to be shaken, even in favor of liberty. And, indeed, upon principle, we cannot well perceive how the remedy could be sustained at law.
Whenever an executor the will annexed, assents to the legacy, the legal title passes to, and vests in, the legatee; and he only, may an action to recover it — from any person who has it in possesslon- And l.lie consent oncegiven, is irrevocable at law, even though the assets prove insufficient for the debts.
The fact that executors permited a slave emancipated at large and act for herself, for 5 or 6 years, is strong elusive in the circumstances — of their assent to the legacy of freedom to her.
The legal title alone gives the right to a legal remedy. He who has it can alone maintain a suit at law in his own name. And as the legal title to chattels vests in the executor, it carries with it the legal remedy.
But it is well established that if the executor, or ad-ministrator with the will annexed, ever assents to the-legacy, the legal title passes to and vests in the legatee forthwith, and “he is in by the devisor,” and may alone, thereafter, maintain an action at law against any one who has come to the possession. And when the assent is once given, it is irrevocable at law — whether there were sufficient assets, or not, for the payment of debts, Paramour vs. Yardley, Plowden, 539; Young vs. Holmes, 1 Strange, 70, and Duppa vs. Mayo, and Saunders’ case, and Chamberlain vs. Chamberlain, and Bastard vs. Stuckley, and Doe, on the demise of Lord Saye and Sele vs. Guy, supra.
If, therefore, the administrators with the will annexed ever- assented to the legacy, or to the. freedom of the slave in question, whether she was or was not necessary for the payment of debts, her legal right to freedom became complete, and was ever afterwards irrevocable, as respects the legaLtitle. And she'being once vested with it, holds under the devisor, and may maintain a suit at law against the administrators, or any other, who has obtained the possession.
' Applying these principles to the facts of the case,, be** fore the Court—
William Price, a witness for the plaintiff, proves that Nancy did go at large, and live as a free woman, some - . ,. , ... , five or six years, from about eighteen months after her mistress’'(Ann Burgess’) death, and .supported herself as a tree woman, and was regarded and dealt with, as such, by the neighborhood. This being with the knowledge of the administrators — which must be presumed— is strong evidence of their assent to the bequest. Indeed, it must be taken as a tacit assent, and unless- counter *156 vailed by other evidence, indicating an intent only to. permit her to go at large temporarily, until the administrators could enquire into the condition of the estate, and the debts against it, without giving, or intending to give, any assent to the legacy, it would be satisfactory evidence of assent, and justify a finding in her favor.
Opinion that the right to freedom of a slave emancipated by will, depended on the ex’ors’ judg' t as to the necessity for selling him (noton their assent to the legacy) is erroneous; and being expressed by the judge, in the hearing of tho jury, is ground for reversal.
A bill of sale of a slave is the best evidence of the sale & terms; and if it appears that there is such a paper, and its absence is not accounted for, parol evidence on those points, is inadmissible.
To repel the presumption of an assent by ex'ors, to a legacy of emancipation, evidence of outstanding debts against the testator’s estate, is admissible. And, a record of an orphans ’ court in another State, tho’ ex parte, may be used— as a similar record of one of our own courts might be — as prima facie, evidence,subject to impeachment by what appears on its face, or by proof aliunde.
*156 But as the Court, in the opinions expressed before the jury, seemed to make the plaintiff’s right to recover depend on the judgment of the administrators,- as to the necessity to sell for the payment of debts, and to predicate a security to the title of the purchaser, on that ground alone, without qualification as to the assentx of the administrators, the jury may have been, and probably were, misled by those opinions in their finding. And though the evidence of Clagget, one of the administrators, was in conflict with the evidence of Price, this can make no difference. The jury had a right to weigh the evidence, and may have given credence to the statement of Price, and disregarded those of Clagget.
It also appears that a bill of sale was executed to Os-burn, for the appellant, on the sale. That bill of sale was better evidence, of the sale, as well as the terms and conditions thereof, than parol proof, and should have been produced, or it’s absence accounted for. The sale being relied on, it was incompetent for the witnesses to speak of the sale, or the terms of the bill of sale, without producing or accounting for it.
For these errors the judgment must be reversed.
The evidence of outstanding debts against Ann Burgess, and the settlements and proceedings in the Orphans’ Court of Maryland, were competent evidence, only as tending to repel the presumption of assent, to the legacy on the part of the administrators. And those proceedings, being ex parte, cannot be admitted to be conclusive. But though not conclusive — as the proceedings of a tribunal of a sister State, constituted, no doubt, by their statutes, and invested with authority to settle with administrators — we feel warranted in giving to their proceedings, at least the force and effect of the proceedings of a County Court here. They must, therefore, be regarded as competent, but only prima facie evi *157 dence of the facts they exhibit. As such, they are liable to be scanned, surcharged or falsified, as well by the marks which appear on their face, as by other extraneous proofs.
Judgment reversed, and cause remanded, that a new trial may be granted, without costs; and the appellant is entitled to her costs in this Court.