5.—Job Rogers, plaintiff in error, vs. Robert Atkinson, admi-istrator, and Menemiah Ligon, administratrix, of Marshall Ligon, deceased, William Solomon, James M. Spullock, executor, and Malinda Hargrove executrix, of Zachariah B. Hargrove, deceased, defendants in error.

## In Equity.

Parol evidence is inadmissible to contradict or vary the terms of a written agreement.

Where the contract is reduced to writing, conversations or stipulations anterior to, or contemporaneous with, the written instrument, are supposed to be merged in it, and are not allowed to be proved by oral testimony.

If it were not necessary in the first instance, to have the contract reduced into writing, parol evidence may be received of conversations and circumstances, *subsequent* to the time of making the agreement, to show that the parties upon sufficient consideration consented afterwards to vary the contract or add some new stipulation.

It matters not how soon after the execution of the written contract, the parol one was made. If it was in fact *subsequent*, and is otherwise unobjectionable, it may be proved and enforced.

Equity relieves against mistakes as well as frauds in a deed or contract in writing, and this either where the plaintiff seeks relief affirmatively on the ground of mistake, or where the defendant sets it up as a defence, or to rebut an equity.

Where an instrument is drawn and executed for the purpose of carrying into effect a contract written or parol, previously entered into, and which by mistake of the draftsman, in fact or in law, does not fulfill the intention of the parties, equity will correct the mistake so as to produce a conformity of the instrument to the agreement.

An injunction will not be granted to stay a sale under an execution, on the ground that the judgment has been fully satisfied, inasmuch as the party has a prompt and adequate remedy at law. It is otherwise when the bill charges, that the payment has been made by the representatives of the principal defendant, or a third person, under a fraudulent combination to oppress the complainant, and that the facts attending the transaction rest in the knowledge of the defendants alone, and can only be obtained by an appeal to their consciences.

This cause was brought before the Supreme Court at Cassville, March term, 1846, upon the transcript of the record, bill of exceptions and writ of error thereon from the Superior Court of Floyd county. Its history is this. Marshall Ligon, the intestate of Robert Atkinson and Menemiah Ligon, commenced suit in his lifetime against Job Rogers, the plaintiff in error, and Zachariah B. Hargrove, then also in life, the testator of James M. Spullock and Malinda Hargrove, to recover damages for a negro boy, wagon, team and harness, alleged to have been lost by the sinking of the ferry boat at Rome, which boat was charged to have been the joint property of Rogers and Hargrove; but which in fact, at the time the accident occurred, belonged exclusively to Hargrove, together with the ferry landings on both sides of the river.

Rogers was merely employed to superintend, and had no interest whatever in the property. About the time the action was instituted, Hargrove executed an instrument of indemnity to Rogers, acknowledging that he alone was liable as the owner of the Ferry, for whatever recovery might be had. A judgment was rendered for Ligon against both defendants for $2,260, from which an appeal was entered. Rogers now

filed his separate plea, claiming entire exemption, upon the foregoing statement of facts, which he was prepared to maintain by proof. Pending the appeal, a compromise was agreed upon between the Representatives of Hargrove and Ligon, to the effect that the appeal should be dismissed—$760 written off the verdict, leaving the judgment to stand for $1,500; and to induce Rogers to consent to the adjustment, an agreement was entered into by all the parties in interest, that the money should be made, or all legal means used to make it, out of the estate of Hargrove, before coming upon Rogers, and upon this promise Rogers acceded to the arrangement. The previous portion of the agreement, as to the dismissal of the appeal, and the scaling of the judgment, was reduced to writing, signed by the respective attorneys of the plaintiffs and defendants, and put on the minutes of the court; the latter stipulation, postponing the property of Rogers from liability until the estate of Hargrove was first exhausted, was not in the instrument. The execution was issued and levied upon the property of the estate of Hargrove, which was amply sufficient for its payment,—no claim was interposed to arrest the sale,—the levy was, nevertheless, dismissed and the *fi. fa.* re-levied upon the goods of Rogers, who filed his bill, returnable to the April Term, 1845, of the Superior Court of Floyd county, wherein he sets forth the previous proceedings as herein recited, and charges also, that one William Solomon, who had taken possession of the whole of the assets of Hargrove, amounting to $30,000, under some pretended claim against the estate, fraudulently combining with the Representatives of Ligon and Hargrove, had obtained the possession or control of the execution, and was seeking to enforce it against the property of the complainant, contrary to the express terms of the agreement, and without which, he, Rogers, never would have consented to the dismissal of the appeal, feeling full confidence as he did, of being acquitted from all responsibility upon the final trial. The bill further charged that Solomon well knew the terms of the agreement, under which complainant claimed to be protected, in the first instance, from the debt, and that he held the property of Hargrove's estate fraudulently, and without paying for it any consideration, and that the execution having been discharged, either by Solomon, or the representatives of Hargrove was *functus officio* and kept open, and sought to be collected illegally and covenously out of complainant. It also affirmed that most of the material facts were in the knowledge of the defendants, or some of them, and could not be otherwise established, but by resorting to their consciences. It concluded by praying that the intention of the parties might be carried into effect, either by setting up that part of the agreement which did not appear upon the minutes of the court, as a separate and independent contract, or if in the opinion of the Chancellor that could not be done, that then the writing itself be re-formed, and the portion omitted therefrom innocently by mistake, or fraudulently by design, be incorporated therein; or that the appeal be reinstated, and a new trial ordered.

There was likewise a prayer for an injunction, which was granted when the bill was sanctioned, the 16th day of November, 1844. At the appearance Term of the bill, April ensuing, a motion was made to dissolve the injunction upon the following grounds, to wit:

1st. Because the complainant in his bill shows the residence of the de-

fendants to be out of the county of Floyd, except James M. Spullock; and that the injunction was granted on the 16th day of November, 1844 ; and that he has made no effort to have any of the defendants served, except said Spullock.

2d. Because the complainant has not by his said bill made such a case as entitled him to any decree in a Court of Equity against the defendants, or any of them, or to any discovery from, or relief against, them.

3d. Because the complainant had entered no appeal in the cause in which the execution sought to be enjoined was obtained ; and no consideration, therefore, passed from him for any promise which may have been to him, if there was any.

4th. Because complainant seeks by his bill to alter the terms of a written contract, and to incorporate in it a new and different consideration from the one therein contained, by parol evidence.

5th. Because the bill is contradictory upon its face, seeking to enforce a separate parol agreement, different from the written contract, and charging also that the same parol agreement was left out of the written contract innocently, by mistake, or fraudulently, by design.

6th. Because the bill seeks to correct a mistake in a written agreement, and then to enforce a specific performance of it against an individual not a party to it, who is a purchaser, for a valuable consideration, and without notice of the mistake.

7th. Because if the execution were paid off, and delivered to William Solomon, as charged, he is entitled to collect the money due thereon, whether he has a written transfer or not.

8th. Because if the execution is paid off by any one, the complainant has a complete and adequate remedy at law.

9th. Because the bill seeks to adjudicate the rights of different individuals, entirely unconnected, and distinct and independent matters, requiring different decrees, as between the same defendants.

10th. Because an injunction has been heretofore granted, at the instance of complainant, against the defendants in this bill, upon the same facts, and for the same subject matter, and the bill dismissed and the injunction dissolved, upon a general demurrer, for want of Equity in the case made by the bill.

Upon this motion, Judge WRIGHT, before whom the cause was tried, pronounced the following judgment :

1st. The complainant's negligence in not having the bill served, nor making any effort to do so, for more than five months after the sanction of the injunction, is good cause not only for a dissolution of the injunction, but for a dismissal of the bill. Our injunctions (which Equity writers call a harsh writ) are granted upon ex parte hearings of the complainant ; and it is a good rule, and one not to be dispensed with, that the complainant use all the means within his power to bring the bill to a hearing. The unqualified statement of counsel, in this case, that he acted under a misapprehension of the *practice*, and had advised his client that it was unnecessary to take measures for the service of the defendants out of the county until Term time, the court, in this instance, will take as a sufficient excuse for the delay.

Rogers vs. Atkinson et al.

2d. Ground being of a general nature, for the want of Equity, I pass and notice the specifications.

3d. Whether the appeal entered by complainant, as defendant at law, would have enabled the complainant to defend at law, or not, it is immaterial to decide ; it was at least a doubtful right, and therefore a sufficient consideration upon which to have a compromise.

4th and 5th. Grounds may be answered together. I cannot think, as insisted upon by complainant's counsel, that it constituted a separate agreement. Rogers signed the written agreement ; the consideration for the withdrawal of the appeal, both to the executors, and also to Rogers, by the writing, was the reduction of the verdict $760. That the judgment should be first collected out of Hargrove's property, and Rogers thereby saved harmless, may have formed an additional consideration why Rogers signed the agreement ; but that, of itself, could not form a separate and distinct contract ; but though it does not form a separate agreement, yet if this consideration was left out by mistake, or fraud, is made to depend upon whether the court considered it a separate agreement or not. A past fact cannot depend upon a future contingency ; besides, pleading in the alternative is bad in Equity, as well as at Law. The allegation must be certain and positive. If, however, the complainant can make the amendment to his bill, by making the allegation positive, that it was to have formed part of the written agreement, and was left out by mistake, or by fraud, he may do so without prejudice to the injunction—otherwise the bill must be dismissed upon this ground.

6th and 7th. Although Solomon is made a party, it does not appear from the bill (which must be taken as true) that he is a purchaser for a valuable consideration ; but that he is a fraudulent and pretended purchaser, among other things, for the express purpose of preventing, by collusion with Ligon, and the executors of Hargrove, the collection of the money due upon the judgment out of the property of Hargrove's estate ; and if he has advanced the money upon the judgment for this purpose, with a full knowledge, as alleged, of Hargrove's liability, *first*, to pay the debt, and save Rogers harmless, it would, so far at least as Rogers is concerned, (who must stand in the attitude of a security, so far as relates to these parties,) be payment of the judgment. He cannot control the judgment by advancing the money upon it for the purpose of consummating a fraud.

8th. Though he might avail himself of payment at law, by illegality, there are other grounds of Equity, and a decree is necessary to incorporate the entire agreement into the written agreement which forms the record upon which the judgment is predicated ; besides, discovery is sought, &c.

9th. If Rogers is security, he is a creditor upon payment of the debt ; and it might well be inquired, whether the conveyance to Solomon, by the Executors, was fraudulent or not. Twenty different issues may be made in the same bill, without multifariousness, for the purpose of arriving at the main issue of the bill, as where property is fraudulently conveyed to different individuals, at different times ; but claiming through each other, for the purpose of defeating creditors, the fraud, in each transaction, may be inquired into in the same bill ; otherwise, Courts of Equity would be incompetent to render adequate relief.

10th. It is not true, as stated, that a bill was dismissed upon general

demurrer, at a previous hearing, upon the same facts, and for the same subject matter.   This bill seeks to correct the record by incorporating the original consideration into it, which the other did not, but sought to enforce an agreement contrary to the record, leaving the record as it found it.   Besides, this bill, if retained, will contain positive allegations of either fraud or mistake, in leaving out matters intended to have been incorporated in the written agreement, which the other did not.   It does not follow that, because a bill has been dismissed, and the Injunction (of course) dissolved, upon a general demurrer, for a want of Equity, that it is such a dissolution upon the merits of the case that no second injunction can be granted.   There is a distinction between the merits of the case, and the merits of the bill.   The first does not mean, as insisted upon, the merits of the case made by the bill; that is, the merits of the bill.   The bill is the case made by the bill, together with eight other parts, mostly formal; but the case made is essentially the bill.   Therefore, an injunction may be dissolved upon the merits of the bill, without being dissolved upon " the merits of the case," within the meaning of the Statute.   A bill, praying specific performance, without payment of the purchasemoney or tender, would have no merits.   There would be merits in a new bill, averring payment, about the same subject matter.   Would a decision upon the first be a decision upon the merits of the case, or upon the merits of the bill ?

At July adjourned Term of the Superior Court, defendants' Counsel again applied to have the Injunction dissolved.   The application was refused, and complainant was allowed farther time to amend his bill. This amendment was made, by striking out so much of the original bill as seemed to set up the stipulation, for the benefit of Rogers, as a separate and independent contract, and making divers other alterations, therein alleging, distinctly and positively, among other things, " that the stipulation left out was a part of the written agreement ; that it should have been incorporated therein ; *that it was omitted by mistake* ;" and the complainant prayed " that it might be reformed according to the *true intent* and *meaning* of the parties."   At the March Term of the Superior Court of Floyd county, 1846, Judge Wright dissolved the Injunction, and ordered the execution to proceed, for the reason, that the complainant still refused or neglected to make the amendment required ; and he reaffirmed the opinion expressed by him in April, 1845, and considered it made as of that term.

Job Rogers, by his attorney, William H. Underwood, complains that there was error committed by the court below, in this—namely :

1st. That the original bill was good, and sufficient in law to entitle the complainant to have and maintain his suit against the defendants, and to call upon them to answer the same.

2d. That the amendment was substantially made, in conformity to the decision of the court, and the amended bill was sufficient to authorize and require the court to compel the defendants to answer.

3d. That in either the original or amended bill, there was enough charged to retain the injunction.

Underwood for plaintiff in error.

The decision admits that almost every charge is sufficient of itself to support the

bill, and yet strangely determines, that unless an amendment can be made, so far as respects one of the charges, the bill must be dismissed; and when the amendment is made, still re-affirms the decision. The first charge in the bill affirms that complainant was not liable at law, and could not have been so held. (*Prince's Digest*, 734, 740; (1) *Taylor* vs. *Rushing*, 2 *Stewart's Rep*. 160. (2) ) The second is, that he was prevented from relying upon this defence by the conduct of defendants. (1 *Johns. Ch. Rep*. 49, 91, 324; 2 *ib*. 228. Thirdly, the agreement set out on the minutes of the court is not, necessarily, all the agreement that was made; and the bill charged, properly, before it was ordered to be amended, that the agreement with complainant was separate, or if not, that it was part of the one agreement, and was left out by fraud or mistake. A bill may be framed in the alternative. (7 *Porter*, 144.) The court, therefore, erred in that part of the decision which affirms the contrary. But the bill, as amended, charges the agreement to be one entire agreement, and that a part was left out by mistake; which the court has power to reform.—1 *Mad*. 48; 1 *Ves*. 168; 2 *Atk*. 203; *ib*. 33; 2 *Johns. Ch. Rep*. 585. The agreement was on sufficient consideration.—*Chit. on Con*. 43, 44, 46, 47, 48, 63. The agreement with plaintiff most distinctly placed him in the attitude of security; and the dismissal of the levy is in equity a release.—*Pothier des ob*. 406, 7 *Johns. Rp*. 332: 2 *Johns. Ch. Rp*. 554; 5 *Bing*. 64; 8 *ib*. 161; 8 *Taunt*. 208; 9 *Wheat*. 680; 8 *Wend*. 512; 10 *Johns. Rep*. 587; 10 *Wend*. 162; *ib*. 126; 9 *Wheat*. 702; 15 *Wend*. 329; 14 *ib*. 165; 6 *Johns. Ch. Rep*. 264; 6 *Wheat*. 466; 11 *Wheat*. 181; 2 *Cowen* 129. Compromising.— 2 *Kinney* 211. After all these charges are noticed, and taken to be true, the single question which presents itself is, can this bill be dismissed, or the injunction dissolved on demurrer.—*Mitford* 108, 111, 4, 5, 134, 159, 161, 164; *Eden on injunctions* 116.

AKIN for defendants in error, cited *Stephens et al*. vs. *Cooper et al*., 1 *Johns. Ch. Rep*. 429; *Parkhurst et. al*., vs. *Van Courtland*; 1 *Johns. Ch. Rep*. 273; 2 *Starkie on Ev*. 518; and *ib. note P.*; *ib*. 550; *Gibson* vs. *Watts*; 1 *McCord's Ch. Rep*. 490 and 505; 6 *Cowen* 690; 1 *Johns. Rep*. 139; 7 *Johns Rep*. 341; 3 *Johns. Rep*. 506; 1 *Johns. Rep*. 414; *Woollam* vs. *Hearn*, 7 *Ves*. 217; 1 *Cowen* 250; 1 *Johns. Ch. Rep*. 50; 2 *Maddox* 292-3; *Story's Eq. Plea*. 295, 301 and 311; *Story's Com. on Eq. Mistake*.

LUMPKIN, Judge, having stated the facts of the case, proceeded to deliver the opinion of the court as follows:

The view we take of this case, renders it unnecessary to examine the various questions which have been discussed by counsel. The decision complained of in the first assignment of error, requiring the original bill to be amended, was made before the act of the legislature was passed creating this court. We shall therefore, for the present at least, decline reviewing it. Whether we have the power to do so, is a point that has not been argued at bar, and as it may, and probably will be presented for adjudication hereafter, in a more direct and solemn form, we will not anticipate it. If this court could not assume jurisdiction over an interlocutory judgment, pronounced in the progress of a case, prior to its organization, which case did not terminate till after its establishment, it is quite obvious that the re-affirmance of that judgment on the final decision of the court below, when the point was not before it, could not

(1.) It shall be the duty of any person who may obtain such establishment, or order, or leave, to keep a good and sufficient ferry-flat or bridge, and to give due attendance thereat; and if any damage shall happen to any person or persons by reason of the insufficiency of such flat or bridge, the non-attendance or neglect of the ferryman or keeper of such bridge, the person so aggrieved or damaged shall and may have and maintain an action against the owner of such ferry or bridge.—*Prin. Dig*. 734.

Inferior courts to require the owners of ferries to give bond and sufficient security, in such sum as they may think proper, conditioned for their keeping in repair a good and sufficient flat, and attendance.—*Prin. Dig*. 740.

(2.) The *Alabama Digest*, referring to the case cited of *Taylor* vs. *Rushing*, 2 *Stewart's Rep*. 160, was read; when the court notified counsel, that they would not absolutely exclude digests of reported cases, but that such digests would not be considered as authority.

give to this court jurisdiction. We express no opinion, then, upon the sufficiency of the original bill, or correctness of the opinion delivered thereon.

The burden of the argument of counsel for the defendant in error has been, to establish the rule, that parol evidence cannot be received, to add to, contradict, or materially vary, a written agreement ; and that the instrument itself must be considered as containing the true understanding between the parties, and as furnishing better evidence thereof than any which can be supplied by parol. We subscribe to the doctrine in all its amplitude, and a series of adjudications, both in England and in this country, in the State and national courts, have firmly and uniformly upheld the principle and placed it beyond the reach of successful attack. It would appear to be doing more than duty requires, an act of supererogation, to refer to the cases. When we reflect, however, that hitherto every thing in the jurisprudence of the State has been fluctuating, and that we are just now upon the threshold of our newly-compacted judicial system, under which what is *written will remain written*, we feel the necessity and importance of settling every principle upon the most solid foundation. In this way alone can we hope to fulfill the design of the Assembly in securing *stability*, as well as *uniformity* in the administration of the law.

In *Hoar and others* vs. *Graham and others*, (3 Campbell's Rep. 57,) the endorsee sued the endorser of a promissory note. The defence set up was, that the defendant refused to endorse the note, unless the plaintiff would agree that it should be renewed on becoming due. They did so agree. Instead of calling for a renewal they demanded payment at the maturity of the note. The evidence was held inadmissable. Lord Ellenborough says :—" The parol condition is quite inconsistent with the written instrument. The condition for renewal entirely contradicts the legal import of the endorsement. After the bill is drawn there may be a binding promise, for a valuable consideration, to run it when due. If the promise *is contemporaneous* the law will not enforce it." In *Powell* vs. *Edmonds*, (12 East 16,) an attempt was made to show by the auctioneer a parol warranty of the quantity of timber contained in the lot purchased, none such appearing in the written conditions of sale :—Thompson Baron, before whom the trial was had, ruled out the testimony, and the question came before Lord Ellenborough on a motion to set aside the verdict. "There is no doubt," says the chief justice, "that the parol evidence was properly rejected in this action ; the purchaser ought to have had it reduced into the writing at the time, if the representation then made as to the quantity swayed him to bid for the lot. If the parol evidence were admissible in this case, I know of no instance, where a party may not by parol proof superadd any term *to the* written agreement, which would be setting aside all written contracts, and rendering them of no effect." Parol evidence was offered in *Woollam vs. Hearn*, 7 Vesey, to show that £50 was the yearly rent intended to be paid, instead of £73 10s., the price inserted in the memorandum of the lease, and repelled by the Master of the Rolls. "To admit," he observed, "to prove that the written instrument does not contain the real agreement, would be the same as receiving it for any purpose. It was to shut out that inquiry that the rule of law was adopted. Though the written instrument does not contain the terms, it must in contemplation of law be looked to, to

contain the agreement,—as furnishing better evidence than parol can supply."

The inflexibility of this doctrine is vigorously supported by all the judges in the case of *Woodbridge* vs. *Spooner*, (1 *Chitty's Rep.* 667, and condensed in 3 *Barn. and Ald.* 233,) where parol proof was adduced to show that a note payable *on demand*, was not to be collected until after the death of the maker. Abbott, C. J. said " The rule was too well established, that parol evidence cannot be admitted to contradict, add to, or vary the terms of a written instrument."

Bailey, J. " It would be extremely dangerous and inconsistent with those general rules of evidence, by which we proceed in courts of justice, to allow a party, after giving an instrument, in which he says, ' I promise to pay on demand, to say by parol evidence, ' You knew I did not mean to pay on demand, but I merely promise to pay when I die.' "

Holroyd, J. " Inasmuch as the evidence went to the extent of contradicting the note itself, it appears to me, that the case comes within the general rule of law, that *parol* cannot be admitted in opposition to written evidence."

Best, J. " Here is a written instrument between the parties by which they are bound, and it would be contrary to the first principles of evidence to receive parol evidence, for the purpose of shewing that the written contract is different from that which it is supposed the parties intended. I know of but one exception to the general rule, and that is founded in public policy, namely, where the contract is illegal; but if it cannot be shown that there was any illegality in the contract, the law must take effect."

The same point was decided in a very similar case, Mosely, assignee of Robinson, a bankrupt *vs.* Hanford, (10 *Barn. and Cress.* 723)—vide *Peacock* vs. *Monk*, 1 *Vesey*, 128 ; *Clarkson.* vs *Hannah*, 2 *P. Wms.* 204 ; 8 *Term Rep.* 147, 379, 384 ; 2 *Wm. Black.* 1249 ; 2 *Bos. & Pul.* 565 ; 2 *Vesey*, 195 ; 6 *Vesey*, 333 ; *Dickens*, 295 ; 1 *Brown's Ch. Ca.* 92, 338 ; 1 *Bla. Rep.* 1202, and *Fell on Guaranties*, 57, 59.) The general rule of the Scotch law is to the same effect, namely, that " writing cannot be cut down or taken away by the testimony of witnesses."—*Tait on Evidence*, *p.* 326–32 ; quoted by *Greenleaf on Evidence*, *p.* 315, *n.* 2.

We will next advert to a few leading American cases ; they will be found equally explicit upon the point under consideration. The case of *Munford et al.* vs. *Macpherson et al.*, was an action upon a *parol warranty* upon the sale of a ship, " that she was completely copper-fastened." The printed bill of sale was in the usual form, and contained no such warranty. In the progress of the argument, the court stopped counsel with this pregnant inquiry, " Can a case be found where an action has been brought upon a parol contract, made *una flatu* with a written contract ?" And Thompson, Justice, in delivering the opinion of the court, remarks, " It is not pretended that there was any fraud in this transaction. Had the plaintiff's claim rested on any deceit in the sale, the evidence would have been admitted ; but the contract between the parties was reduced to writing, and is contained in the bill of sale, and recourse must be had to that instrument to ascertain its extent. It cannot be a safe and salutary rule to allow a contract to rest partly in writing and partly in parol. Whenever it is reduced to writing, that is to be considered as the evidence of the

agreement, and anything resting in parol, becomes thereby extinguished." (1 *Johns. Rep.* 414.) In *Howes* vs. *Barker*, (3 *Johns. Rep.* 309,) C. J. Kent says. " I have struggled hard, and with the strongest inclination to see if the form of the action would not help the plaintiff in this case ; but I cannot surmount the impediment of the deed. Sitting in a court of law, I think I am bound to look to that deed as the highest proof of the final agreement between the parties." In *Maighley* vs. *Hamer*, (7 *Johns. Rep.* 341,) the court declared, " It is a settled rule that where the consideration is expressly stated in a deed, and it is not said, also, for divers other considerations, you cannot enter into any proof of any other, for that would be contrary to the deed. The remedy for the party, if the deed be contrary to the truth of the case, is by seeking relief in equity against the deed on the ground of fraud or mistake." (See also *Fitzhugh* vs. *Runyon*, 8 *Johns. Rep.* 375 ; 2 *Cain*, 161 ; *Kirby's Ct. Rep.* 22.) In *Parkhurst* vs *Van Courtlandt*, (1 *Johns. Ch. Rep.* 281,) the principle is thus strongly stated by the Chancellor ; " I apprehend the rule to be too reasonable, and too well established to be now disturbed, that where an agreement is reduced to writing, all previous negotiations are resolved into the writing, as being the best evidence of the certainty of the agreement. Everything, before resting in parol, becomes thereby extinguished, or discharged. Parol proof cannot be resorted to, either to supply what may be uncertain or defective in the writing."

We conclude then that there is no rule of law better settled, or more salutary in its application,than that which refuses to admit oral testimony to contradict, vary, or materially affect, written agreements, whether specialties or simple contracts, and whether within or without the statute of frauds ; and we believe that we are altogether safe in asserting that it has been recognised and adopted by every State in the Union.—4 *Ohio Rep.* 347 ; 16 *Sergt. & Rawle*, 108 ; 6 *Dana*, 156 ; 5 *Pick.* 38 ; 1 *Dev. & Bat.* 250 ; 6 *Halsted's N. J. Rep.* 275 ; 10 *Gill & John. Rep.* 404 ; 11 *Louis. Rep.* 133, 416 ; 6 *Porter's Rep.* 132 ; 5 *Yerger*, 194, 195 ; 7 *Leigh. Rep.* 632 ; 1 *McCord Ch. Rep.* 490. The question has been repeatedly adjudicated by the courts of the United States.—8 *Wheaton*, 174 ; 9 *Wheaton*, 581 ; 3 *Mas. C. C. Rep.* 378 ; *Peters' C. C. Rep.* 85, 199 ; *Gilpin's D. C. Rep.* 329 ; 3 *Dall.* 415 ; *Bald. C. C. Rep.* 489. To use the emphatic language of a popular modern law writer—" It has been so frequently adjudged by the courts on both sides of the Atlantic, as to have the resistless force of a maxim, that parol evidence cannot be received in a court of law, to contradict, vary, or materially affect, by way of explanation, a written contract." Indeed the rule itself seems never to have been questioned, by courts at least.) The nearest approach to it, I have met with is by Mr. Justice Huston, in the case *of Thompson et al.* vs. *McClenachan et al.*, (17 *Sergt. & Rawle.*) His remarks as reported, are these : " There is scarcely any subject more perplexed than in what cases, and to what extent, parol evidence shall be admitted : not only have different men viewed the subject differently, but the same man, at different times, has held opinions not easily reconciled ; and I doubt whether any lawyer, of many years standing, and much reflection can say his mind has never wavered upon the subject. In theory adhere to the writing, neither see nor hear anything out of the deed, seems to sound well, and it would work well in practice, if all who give instructions to scriveners were per-

Rogers *vs.* Atkinson et al.

fect; if all scriveners perfectly understood their instructions, and put them on paper perfectly according to law ; and the whole was completed by executing them at the time, and in the order and manner which their nature and the law requires. But when this perfection cannot be even imagined to exist in this world, and the want of it is as apparent in deeds and other writings as anywhere else, the beautiful theory must yield to substantial justice." This railing accusation against the doctrine, or rather, we should say against the imperfection of everything human, so far from weakening, but demonstrates its impregnability. Equity comes in, as we shall hereafter see, to relieve the grievances, so vividly portrayed, leaving the rule at law to maintain its undisputed sway.

It is true that counsel occasionally when hard pressed, have insisted that " juries are the legitimate judges of the effect and the weight of evidence, and that the question between written and parol evidence, resolves itself at last into an inquiry as to the weight of evidence only, and that juries ought to have an opportunity of judging whether the terms of the contract are reduced to writing, or as orally agreed by the parties at the time of the transaction shall govern. They contend that to every contract, the consent of two minds at least is necessary, and that it is only on the evidence of such consent that the law enforces the observance of the contract, or furnishes the breach of it. This is an old professional device, to misrepresent the relative value of testimony, and it requires a degree of judicial excellence scarcely attainable to guard against the acuteness of counsel, when the known rules of evidence apply directly against their client. Who does not recollect the ingenious effort of the great Roman Orator, in his elegant oration for the poet Archias to elevate parol evidence even above records ? (a)

But the reply uniformly from the Bench is—" The preference which the law gives to written evidence, when compared with parol testimony of parol agreements, is the unavoidable result of experience. It is impossible to expect that certainty or exactness in the one form of evidence which is found in the other ; where a contract has been put in writing, assented to, signed by the parties concerned, and continues in being, evidence of other parol stipulations, before and at the same time, to explain or vary the written agreement, would be a rejection of that evidence, which is necessarily the best." While the application of the rule, as now laid down and expounded by the court, is admitted in deeds and other specialties, it has been argued that it did not apply to written simple contracts; that there was no distinction between written and

(a) "Est ridiculum ad ea quæ habemus nihil discere; quærere, quæ habere non possumus; et de hominum memoria, tacere, literarum memoriam flagitare ; et, cum habeas amplissimi viri religionem, integerrimi municipii jusjurandum fidemque, ea, quæ depravari nullo modo possunt, repudiare, tabulas, quas idem dicis solere corrumpi, desiderare."

&c. Which, is translated by Duncan in his copy of Cicero's Orations, as follows: " Now is it not ridiculous to say nothing to the evidences which we have, and to desire those which we cannot have; to be silent as to the testimony of men, and to demand the testimony of registers ; to pay no regard to what is affirmed by a person of great dignity, nor to the oath and integrity of a free city of the strictest honor; evidences which are incapable of being corrupted, and to require those of registers, which you allow to be frequently vitiated?"

parol contracts; that they were of equal rank, and that the same evidence might be given as to the one and the other. The rule excluding oral testimony has been universally applied to simple contracts in writing, to the same extent as to specialities—and the reason of the rule applies to one, as well as to the other : When parties have deliberately put their engagements in writing, it shall be presumed to contain their whole understanding, so that oral testimony of conversations, or declarations at the time it was completed, or before, would tend often to substitute a new and different contract, for the one which was really agreed upon—and of course usually to the prejudice of the party opposed to it.

Again, it has been thought that there is a difference between that class of cases required by the statute of frauds to be in writing, and those not within the statute. But the authorities abundantly establish, that this restrictive application has not prevailed, and was expressly repudiated by the court in Massachusetts, in the case of *Stackpole* vs. *Arnold*, and the broad proposition adhered to by Justice Parker, that oral testimony is not to be received, to contradict, vary, or materially affect, by way of explanation, any written contract, whether under the statute of frauds, or not, provided the contract is perfect within itself, and is capable of a clear and intelligible exposition from the terms of which it is composed.

To prevent misapprehension, it may not be amiss to specify succinctly the modification of the doctrine and the exceptions to the rule. Where it is not necessary, in the first instance, to have the bargain reduced into writing, evidence of conversations *subsequent* to the time of making the agreement, would probably be admitted, to show that the parties agreed afterwards to vary the contract, or add some new stipulation. Here, the written agreement, so far as it purports to express the true meaning of the parties, up the time of its execution, is not in any manner contradicted or impugned; but, from the proposed evidence, it would appear, that they afterwards varied, or *added to the contract*, which is not inconsistent with anything contained in the original agreement.—1 *Phil. on Ev.* 562 ; 1 *John. Cases*, 22 ; 5 *Cowen*, 249 ; *ib.* 497 ; 7 *Gill. & John.* 407 ; 4 *New Hamp.* 45 ; 3 *Fairf.* 441 ; 1 *Mar. Ken. Rep.* 582 ; 2 *M. Louisa. Rep.* 157 ; 6 *Halst. Rep.* 174; 2 *Baily*, 121, 113 ; 12 *Mas. Rep.* 481.—Nor does it matter how soon after the execution of the written contract, the parol one was made. If it was, in fact, *subsequent*, and otherwise unobjectionable, it can be proven and enforced; and that, too, when it relates to the same subject matter. In *Brewster* vs. *Countryman*, 12 *Wend.* 446, the court held that *parol evidence* of an agreement to indemnify, and save harmless, a purchaser of personal property is admissible, although the agreement in respect to the sale is reduced to writing, and contains no such stipulation, provided, the *parol agreement* was made subsequent to the written agreement. Here the vender refused to give a written warranty, but said, " I *have sold* you the property, it is yours, and I *will see you out with it*." This indemnity was considered and adjudged to be valid. So much for the modification of the doctrine. And in view of this, and numerous other cases to the same purport, were we permitted to travel back so far, we might doubt, at least, the propriety of holding the contract made with Rogers, as a part of the original agreement, so much so as to make it absolutely necessary to reform the writing on the minutes by having it inserted. At any rate, it would seem to

have been proper to have submitted it, as a matter of fact, for the jury to find whether, in point of time, it was not *subsequent* to the arrangement agreed upon between the administrators of Ligon, and the executors of Hargrove, and based upon a new and distinct consideration.   The representatives of the two estates were the parties to the contract in writing; and the same representatives of the *one part*, and Rogers of the *other part*, parties to the stipulation omitted.   The interest, too, of the co-defendants, so far from being identical, except in the diminution of the verdict, was antagonistic, especially as it regarded the collection of the claim.   So much of the agreement as was put in writing, and entered on the minutes, was necessary to dispose of the litigation then pending, and became the judgment of the court.   This consent of the parties, through their counsel, was the only authority of the court for dismissing the appeal, and lessening the damages recovered on the first trial; the part left out was not only not necessary to be placed on the records, *but could not have been enforced*, in the controversy then before the court.   Some of the exceptions are plainly enumerated by Justice SUTHERLAND, in the case of *Erwin* vs. *Sanders and Ely* (1 *Conn.* 249).  " The rule," says he, " does not exclude parol evidence of *fraud*, or the *want* or *failure* of *consideration* in, nor the *enlargement of the time for performance*, or the waver of the *performance* of a written simple contract."   The rule is directed only against the admission of any other evidence of the *language* employed by the parties in making the contract, than that which is furnished by the writing itself; no other words are to be added to it, nor substituted in its stead.   Surrounding circumstances may be invoked, to cast light upon the meaning of the parties.   The rule does not exclude the *testimony* of *experts* to aid the court to interpret truly the instrument.   Parol evidence is admissible to explain latent ambiguities, to rebut an equity, and to contradict a receipt; nor is the rule which repudiates it infringed by any evidence of *known and established usage*, respecting the subject to which the contract relates.—*Greenleaf on Ev.* 315, 754.

And in the case of *Gibson* vs. *Watts*, in the Court of Appeals of South Carolina, it was admitted, that " when a mistake has been made by the misconception of the scrivener, or error in calculation, or any other obvious mistake, that parol evidence may be let in to show such mistake."   And it is to that branch of the case, that the court proposes now to address itself:   And it will be found that the extent to which adjudications have gone in granting relief, will be a complete answer even to the complaints of the Pennsylvania functionary in his arraignment of a rule, venerable alike for its antiquity and good sense.

In England, as well as in this country, it has been the steady language of Chancery, that a Court of Equity has the power to reform a written agreement, and to supply by parol proof so much thereof as may have been left out by fraud or mistake.   But while the rule itself is admitted, some difference of opinion or doubts seem to exist as to its application. While this species of evidence has been uniformly received in behalf of a defendant,—a plaintiff seeking specific performance has not always been treated with the same indulgence.   Indeed the English Courts have repeatedly expressed a strong inclination, not to decree in favor of plaintiffs seeking not to set aside the agreement, but to enforce it, when it is reformed by the parol evidence.   They affirm that the difference of *right*

and *condition* as to the plaintiff and defendant, of evidence offered for the purpose of obtaining a decree and resisting it, exists in the code of every civilized nation. *Favorabiliores, rei potius quam actores habentur*—being the maxim of the civil law, and *potior est conditio defendentis* the familiar language of theirs. The ground of the distinction is this,—When a party has entered into a written agreement, and seeks as plaintiff a specific performance of it, he must rely on the agreement as it stands,—he can neither add to, vary nor explain any of its terms, by parol proof. If he cannot enforce the true contract, he still retains all he ever was in possession of. He may suffer disappointment, which, as the consequence of his want of caution and explicitness, he must bear. But not so with the defendant. He might encounter not disappointment only, but sustain ruinous loss, if compelled specifically to execute an agreement different from that which he contemplated. Were this distinction tenable, Rogers is in the attitude of one who has fully and completely, and at the sacrifice of his rights at law, executed his part of the agreement, in submitting to the dismissal of the appeal, upon the trial of which he would probably have escaped all liability, and is now insisting that it is unjust, and unconscientious in his faithless adversaries not to abide by the whole of the terms thereof. Judge Story in his learned commentary upon this branch of equity jurisdiction, remarks " that it is extremely difficult to perceive the principle upon which the foreign decisions can be supported, consistently with the acknowledged exercise of power in the court, to reform written contracts and to decree relief thereon." It will be found I apprehend that nearly all the cases, in which relief has been refused to the plaintiff were under the statute of frauds, and most of them respected an interest in land, and here parol proof is always received with great caution.

We will not undertake to review the transatlantic authorities. The task has been ably and admirably performed by Chancellor Kent, the Father and ornament of the American Bar, in the case of Gillispie and wife, against Moore, and the conclusion at which he arrived was, that the mistake may be shown by parol proof, and relief granted to the injured party, whether he sets up the mistake *affirmatively by bill,* or as defence.— 2 *Johns. Ch. Rep.* 15, 85. He declares that it would be a great defect in what Lord Eldon terms the moral jurisdiction of the court, if there were no relief in such cases ; that he has looked into all the cases under this head of Equity jurisdiction, and that it appears to be well and thoroughly established, and on great and essential grounds of justice, that relief can be had against a deed or contract in writing, founded in mistake or fraud, whether it was to the prejudice of the one party or the other. And in a later case, *Reiselbroek* vs. *Livingston,* (4 *Johns. Ch. Rep.* 144,) the same eminent jurist says, " The Master of the Rolls stopped short of relief in the case of *Woollam* vs. *Hearn,* (7 *Ves.* 211) where a mistake was alleged, because he said there was no precedent allowing parol proof to correct a mistake in *favor of a plaintiff* seeking specific performance of an agreement. I am not sufficiently instructed at present to admit the soundness of this distinction, which holds parol evidence admissible to correct a writing *against* but not in *favor* of a plaintiff. Lord Hardwick does not appear to have been aware of any such distinction in the two cases to which Sir Wm. Grant refers ; and why

should not the party aggrieved by a mistake in the agreement have relief, as well where he is plaintiff as where he is defendant? It cannot make any difference in the reasonableness and justice of the remedy. If a court has a competent jurisdiction to correct such mistakes, (and that is a point understood and settled,) the agreement when corrected, and made to speak the real sense of the parties, ought to be enforced, as well as any other agreement perfect in the first instance. It ought to have the same efficacy, and be entitled to the same *protection,* when made accurate under the decree of the court, and when made accurate by the act of the parties. The one case illustrates the other, *res accendent lumina rebus.*

Treading in the footsteps then of Hardwicke, Eldon, Kent, Story and other distinguished Judges of the mother country, our sister States, and of the United States, we hold that parties, whether plaintiffs or defendants, whether seeking to set aside and cancel an agreement, or reform and enforce it, can be relieved, as well on account of *mistake* as *fraud.* It would be monstrous to suppose that the arm of the Judiciary of Georgia was too short, or too weak, to reach and relieve, provided the contract variant from the true one could once be got into writing! This doctrine was pushed perhaps to its extreme limits by the Supreme Court in the case between *Hunt* and the administrators of *Rousmaniere* (1 *Peters' Rep.* 1.) Hunt filed his bill on the Chancery side of the Circuit Court of the United States for the district of Rhode Island, setting forth that he had, at two several times, loaned Rousmaniere money, for which, in addition to the notes, he was to have, as collateral security, a bill of sale, or mortgage, of the interest of the borrower in two ships. The Nerius and the Industry. Upon consultation with counsel, Rousmaniere executed to Hunt a power of Attorney, authorizing him to make titles to himself, or any other person, to his (Rousmaniere's) interest, in those vessels, upon the non-payment of the notes at maturity; and in the event of their loss, (being then out at sea,) to collect and appropriate to his demand the premium which would be due upon the policy of insurance. This security was taken under a mistake of law, that the power of attorney would bind the property equally with a mortgage, in case of death or other accident. Rousmaniere died intestate and insolvent, having paid a small part only of the debt, and this bill was brought by the creditor against the administrators, to get a priority of lien on the assets of the deceased, in preference to the general creditors. The case was vigorously contested and thoroughly discussed, twice before the Circuit, and twice before the Supreme Court.—2 *Mason's Rep.* 244, 342; 8 *Wheaton,* 174; 1 *P. S. C. Rep.* 1, 14. Chief Justice Marshall delivered the opinion of the Court upon the first hearing at Washington. from which we extract the following sentences, " Although we do not find the naked principle that relief may be granted, *on account of ignorance of the law,* asserted in the books, we find no case in which it has been decided that a plain and acknowledged mistake is beyond the reach of equity." " No proof of *actual mistake* is required, the existence of an antecedent equity is sufficient;" that is to authorize the court to presume it: and the decree concludes thus : " And we are unwilling, where the effect of the instrument is acknowledged to have been entirely mistaken by both parties, to say that a court of equity is incapable of affording relief."

The court, however, finally denied relief, upon the ground, that they

could not substitute another and distinct security from that selected by the parties; that to do this would be equivalent to making a new agreement, not contemplated by either party, *instead of* executing that actually made. Judge STORY, who presided on all the successive trials, in referring to this case in his Treatise on Equity, says, " Equity may compel parties to execute their agreements, but it has no authority to make agreements for them, or to substitute one for another. If there had been any mistake in the instrument itself, so that it did not contain in it what the parties had agreed on, that would have formed a very different case."

MR. Justice WASHINGTON, who pronounced the final judgment, lays down these general principles as incontrovertible, namely, that, whenever an instrument which purports to set out the contract, violates by omissions or insertions the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity in the instrument to the agreement; and he assigns this obvious and most sensible reason : The object of courts is to carry out the contracts of parties fairly and legally entered into, and if the instrument, from want of skill or mistake, or *for any other cause*, is insufficient to execute the intention of the parties, the writing itself might be enforced, but the agreement itself would remain as unexecuted, as if one of the parties had refused altogether to comply with his engagement; and a Court of Equity will, in the exercise of its acknowledged jurisdiction, afford relief as well in one case as in the other, by compelling the delinquent party fully to perform his agreement, according to the terms of it, and the manifest intention of the parties. So if the mistake exist not in the instrument itself, which is intended to give effect to the agreement, but in the agreement itself, if it clearly proved to have been the result of some material fact, a court of equity will, in general, grant relief, according to the nature of the particular case in which it is sought." And to this extent we are prepared unhesitatingly to go in the present case. Taking the statements of the bill as true, and the motion to dissolve the injunction for the want of equity, like a general demurrer, admits them to be true, we ask, does the instrument on the minutes of the court, and which, it does not appear was ever seen by Rogers, carry into effect the *agreement* of the parties ? On the contrary, is it not manifest that one of its most important provisions was omitted by want of skill in the draftsman, surprise, or some other cause ? And would it not be contrary to the first principles of justice, to permit the representatives of Ligon to enjoy the full benefit which they derived from it, and refuse relief to Rogers ? And that, too, when in his amended bill, he plainly and positively alleges that the part left out, was a portion of the contract attempted to be put in writing, that it ought to have been incorporated therein, and was omitted by mistake ; and the complainant prays to have the instrument reformed according to the true intent and meaning of the parties ? It is the unanimous opinion of the court, that the court below committed error in adjudging these allegations insufficient to entitle the complainant to the answers of the defendants, and a decree in conformity with the nature of his case, and to have the injunction in the mean time retained.

As to the third ground, we are clear that, without disturbing the written instrument, there was enough in the bill to have authorized and re-

quired the injunction to be retained. A judgment was obtained against the estate of Hargrove and Rogers for $1,500. Rogers, by the declaration of Hargrove, under his own hand, as well as by law, (*Prin. Dig.* 734, 740 ; 2 *Stewart's Rep.* 160,) stands in the attitude of security only to the debt: an execution issues, is levied on the property of the principal, more than sufficient to satisfy it, nothing is done to prevent the sale, when Solomon, with a full knowledge that the estate of Hargrove was primarily liable, purchases the whole thereof, of the value of $30,000, under some pretended claim as it is alleged, takes the control of the fi. fa., dismisses the levy, and has it relevied upon the goods of Rogers, and that too, as it is charged, after he, or the representatives of Hargrove, had discharged the demand ; and all this done fraudulently, and under a combination to oppress Rogers, by coercing the money out of him, contrary to the explicit acknowledgment of his co-defendant, when in life, that he alone was responsible. We will not characterize such conduct by branding it as flagrantly unjust, or extremely culpable ; we think, however, that it would strike the dullest apprehension at a glance, that it required to be vindicated, or at least explained, by the defendants, in their answers ; and instead of assailing the equity of the bill, the wiser course, perhaps, would have been to have met these grave charges by a total denial of them, provided they were unfounded. We do not sit here, however, to give advice, but to do justice to these litigants.

It is, therefore, ordered and adjudged by the court, that the bill, as amended, contains matter good and sufficient in law to entitle the complainant to the answers of the defendants ; and it is further ordered that the injunction be reinstated.